UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KRISPY KRUNCHY FOODS, L.L.C. | CIVIL NO. _____ Section:___ |
| *Plaintiff* | |
| Versus | DISTRICT JUDGE:_____ |
| CAJUN WORKS INC, TOBY KIMBALL, AND DENISE SANDERS KIMBALL, ALL CAJUN CORNER CAFÉ/CANAL | DIVISION: _____ |
| | MAGISTRATE JUDGE:_____ |
| *Defendants* | |

**COMPLAINT FOR INJUNCTIVE RELIEF, BREACH OF
CONTRACT, AND DAMAGES**

Krispy Krunchy Foods, L.L.C. ("KKF") makes the following

allegations of law and fact in support of its *Complaint for Injunctive Relief,*

*Breach of Contract, and Damages ("Complaint"):*

NATURE OF CASE

1.     The defendants, Cajun Works Inc., Toby Kimball, and Denise

Sanders Kimball, all doing business as Cajun Corner Café/Canal

(hereinafter collectively referred to as "Defendants"), have ignored

months of demands delivered in person, by electronic mail, and by letters

instructing them to discontinue the use of certain words, terms, symbols, and/or devices that are misleading and confusing the public into thinking that the Cajun Corner Café/Canal located at 24386 U.S. 190, Krotz Springs, Louisiana  70750, is affiliated with, connected to, or associated with KKF, all while selling non-KKF products.

2.      Defendants should be enjoined from any further false designations of origin, dilution of KKF's trademarks and trade dress, trademark infringement, and unfair competition and trade practices, all of which arise out of Defendants' wilful and knowing use of certain words, terms, symbols, and/or devices to mislead and confuse the public into thinking that the Cajun Corner Café/Canal is affiliated with, connected to, or associated with KKF.

3.      The Court should require that Defendants pay sums allowable under federal trademark law in order to account for the profits Defendants obtained by misleading and confusing the public into thinking that the Cajun Corner Café/Canal is affiliated with, connected to, or associated with KKF.

4.      The Court should also require Defendants to pay KKF for damage to its intellectual property and its reputation, both of which will

have to be rehabilitated in the Krotz Springs, Louisiana area, and within the convenience store and quick serve restaurant industry.  The Court should also take note of Defendants' open and defiant refusal to cease using KKF's intellectual property, despite repeated amicable demands by KKF, making this matter an "exceptional case" under federal trademark law, which warrants the award of KKF's attorney's fees.

<u>PARTIES</u>

5.      Plaintiff, KKF is a limited liability company organized under Louisiana law.  KKF's principal place of business is 1615 Harris Street in Alexandria, Louisiana.

6.      Defendant, CAJUN WORKS INC., is a business incorporated under Louisiana law.  Its principal place of business is 2431 West Atchafalaya Levee Road, Krotz Springs, Louisiana, 70750, and it does business under the name of Cajun Corner Café/Canal, located at 24386 U.S. 190, Krotz Springs, Louisiana 70750, and will be referred to in this *Complaint* as CAJUN WORKS.  Defendant, CAJUN WORKS, can be served through its Registered Agent, Toby Kimball, at 2431 West Atchafalaya Levee Road, Krotz Springs, Louisiana 70750.

7.     Defendants, TOBY KIMBALL and DENISE SANDERS KIMBALL, are residents of the full age of majority, residing St. Landry Parish, Louisiana.  Defendants, TOBY KIMBALL and DENISE SANDERS KIMBALL, are residents of this Judicial District and can be served at 2431 West Atchafalaya Levee Road, Krotz Springs, Louisiana, 70750. Defendants, TOBY KIMBALL and DENISE SANDERS KIMBALL, are both doing business under the name Cajun Corner Café/Canal, located at 24386 U.S. 190, Krotz Springs, Louisiana 70750.

8.     All defendants will be collectively referred to in this *Complaint* as Defendants.

SUBJECT MATTER JURISDICTION

9.     This Court has original and concurrent jurisdiction over the subject matter of KKF's claims under:

(a)     28 U.S.C. § 1331, which authorizes district courts to hear civil actions arising under Acts of Congress, such as the trademark laws of the United States, 15 U.S.C. §§ 1051, *et seq.*;

(b)     28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a), which authorize district courts to hear civil actions arising under Acts of Congress related to trademarks;

(c)     28 U.S.C. § 1338(b), which authorizes district courts to hear state law unfair competition claims when joined with a

substantial and related claim under U.S. trademark laws; and

(d)   28 U.S.C. § 1367(a), supplemental jurisdiction over all other actions so related to the actions subject to this Court's jurisdiction under (a) - (c) above that form part of the same case or controversy under Article III of the United States Constitution.

## PERSONAL JURISDICTION

10.   This Court has personal jurisdiction over Defendants because they are each engaged in business activities in and directed to Louisiana within this judicial district, and because Defendants knowingly committed tortious acts aimed at Louisiana juridical persons, acts which caused harm within Louisiana and this judicial district.

## VENUE

11.   Venue is proper in this judicial district under:

(a)   28 U.S.C. § 1391(b)(1), in that all Defendants reside in Louisiana and in this judicial district; and/or

(b)   28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions establishing claims occurred in this district; or alternatively:

(c)   this is a district where the Defendants are subject to this Court's exercise of personal jurisdiction regarding the claims.  28 U.S.C. § 1391(b)(3).

## THE PRODUCT

12.    KKF was established in 1993.  KKF's principals boast a combined seventy (70) years of experience in the convenience store ("C-Store")/food service industry.

13.    KKF has more than one thousand (1,000) locations in thirty (30) states in the United States.

14.    KKF provides food products to convenience stores ("C-Stores"), quick-service restaurants ("QSRs"), and supermarkets, among other types of entities.  KKF's C-Stores, QSRs, and supermarkets are referred to as Operators.

15.    KKF offers its prospective Operators considerable assistance in store remodeling, re-design, and construction planning.

16.    The heart of KKF is the chicken it provides for its Operators ("Krispy Krunchy Chicken").

17.    KKF holds Krispy Krunchy Chicken out to the industry and its customers as a "proprietary prepared bird."

18.    KKF has distinguished itself from its competitors by offering the only chicken program of its kind with a proprietary chicken *preparation*.

19.    KKF chicken is marinated before it is delivered to KKF's

Operators.  KKF's proprietary preparation process results in a distinctive Cajun flavor.  KKF's proprietary preparation process not only causes its chicken to taste better, but it also results in a 50% longer shelf life before cooking.

20.    Further, KKF's chicken is exclusively produced by Tyson Foods, Inc. ("Tyson"), which is headquartered in Springdale, Arkansas.

<u>THE BARN AND SUN LOGO AND ASSOCIATED TRADE DRESS</u>

21.    KKF adopted a Barn and Sun logo in 1993 to identify its products as coming from a single source.  In 1993, KKF began using the Barn and Sun logo and associated trade dress in commerce to sell chicken and related food products to vendors in Louisiana and surrounding states.

22.    The associated trade dress used by KKF to sell chicken and related food products includes, among other things, photographs, signs, artwork, graphics, logos, displays, and menu boards.

23.    Around 2006, KKF began to expand the scope of the market for its products to a national scale.

24.    In light of the popularity of Krispy Krunchy Chicken and the distinctiveness of the Barn and Sun logo and associated trade dress, on

May 5, 2010, KKF applied for federal registration of the Barn and Sun logo on the Principal Register of the United States Patent and Trademark Office ("USPTO").

25.    KKF's trademark application for the Barn and Sun logo was published for opposition on June 21, 2011.

26.    There were no oppositions to the Federal registration of the Barn and Sun logo, so the USPTO issued a Certificate of Registration to KKF on September 6, 2011.  See Certificate of Registration No. 4,021,369, attached hereto as Exhibit "A."

27.    KKF has continuously used the trademarked Barn and Sun logo and associated trade dress to identify its food products and to distinguish them from food products processed and sold by others.  KKF has accomplished this by prominently displaying the Barn and Sun logo and associated trade dress on store displays, food packaging, letterheads, bills, direct mail advertising, telephone directory advertising, internet marketing and websites, and in periodicals distributed throughout the United States.

28.   The Barn and Sun logo is reproduced below:



29.   Every package of chicken marked with the Barn and Sun logo guarantees that the packaged product was prepared using KKF's proprietary preparation process.

30.   KKF-approved displays feature multiple instances of the Barn and Sun logo.

31.   KKF is active in The Association for Convenience and Fuel Retailing ("NACS", formerly known as National Association of Convenience Stores) and is an exhibitor at their annual convention, often highlighting its role in industry changes in programs for use by C-Stores, QSRs, and supermarkets. KKF has been mentioned by Convenience Store Petroleum, a leading C-Store industry publication, no less than forty (40) times in the last four (4) years.

## THE PROGRAM

32.    KKF offers a program (the "KKF Program") through which KKF allows Operators to market and sell KKF food products, all through KKF's proven, uniform trade dress scheme.

33.    Under the KKF Program, Operators agree to (or to do) the following:

- Buy and use KKF's proprietary products.

- Maintain the KKF Program as specified during on-site training.

- Buy all related food service products from KKF's designated supplier.

- Accept new products introduced by KKF from time to time.

- Remove all KKF signage and paper goods at the Operator's expense if the Operator decides to discontinue the KKF Program.

34.    Under the KKF Program, KKF agrees to:

- Provide its Operators approximately one week's training at the Operator's location at KKF's expense.

- Schedule retraining at the Operator's request and according to trainer availability.

- Provide assistance with operational problems, such as gross profit, volume, labor, etc.

- Grant geographic protection from other Operators wanting to participate in the KKF Program in a nearby location.

35.    Noncompliance in the KKF Program is typically a result of the price of KKF's chicken.  Because KKF needle marinates small, young birds at the Tyson chicken plant, KKF's chicken costs about $0.35/1b more than the competitors' generic, saline injected chickens.

36.    Based on KKF's experience, Operators who change to a less expensive chicken product in lieu of KKF's chicken, thinking that they will save money, always end up losing volume in sales.  The resulting loss in cash flow is usually significant.

37.    When an Operator decides to no longer participate in the KKF program, or when an Operator is no longer complying with the KKF program, KKF reminds the Operator of its duty to remove KKF signage and paper goods at the Operator's expense.

38.    If the reminder fails, then KKF sends the Operator a letter from an attorney, warning the Operator of the consequences of failing to remove the signage and paper goods.

<u>DEFENDANTS AND KKF</u>

39.    Defendants operate Cajun Corner Café at 24386 U.S. 190 in Krotz Springs, Louisiana 70750.

40.     On or about February 7, 2007, Defendants agreed to participate in the

KKF Program.  See *Letter of Understanding*, attached hereto as Exhibit "B."

Since then, Defendants have displayed the KKF Program trade dress at the

Cajun Corner Café, including but not limited to the Barn and Sun logo, a

KKF menu board, and other related graphics.  An image of the store display

at the Cajun Corner Café is reproduced below:



41.     Defendants eventually stopped purchasing KKF products to sell at the

Cajun Corner Café.  As stated in the *Letter of Understanding* attached hereto

as Exhibit "B," Defendants were obligated to remove all KKF signage at

Defendants' cost if they decided to discontinue the KKF Program.

42.    After Defendants were no longer participating in the KKF program, and after Defendants had been repeatedly reminded to comply with their contractual obligation to remove all KKF signage at Defendant's expense, counsel for KKF wrote a letter to Defendants demanding that they discontinue using at the Cajun Corner Café/Canal all KKF photographs, signs, artwork, graphics, logos, displays, trademarks, trade dress, menu boards, and/or products that indicate any affiliation, connection, and/or association with KFF in any manner whatsoever.  *See* letter attached hereto as Exhibit "C."

43.    Defendants have refused to comply with their contractual obligations and KKF's demands.  Defendants continue to display KKF's photographs, artwork, graphics, logos (or parts thereof), displays, trademarks, trade dress, and menu boards that indicate an affiliation, connection, and/or association with KKF.  *See* image shown in paragraph 40 above.

44.    To date, Defendants continue to operate a food program, selling chicken and related items, while refusing to comply with their contractual obligations and KKF's demands, in breach of Defendants' contract with KKF (Exhibit "B"), and in violation of KKF's intellectual property rights.

3348544.2

## THE EFFECT OF DEFENDANTS BEHAVIOR

45.    Defendants' unauthorized use of KKF's photographs, artwork, graphics, logos (or parts thereof), displays, trademarks, trade dress, and menu boards:

      (a)   has caused consumer confusion and/or mistake;

      (b)   is likely to cause consumer confusion and/or mistake;

      (c)   is likely to deceive consumers and potential consumers of KKF and Defendants, at least as to some affiliation, connection or association of Defendants with KKF, or as to the origin, sponsorship, or approval of Defendants food program by KKF;

      (d)   falsely designates the origin of Defendants' food program and products;

      (e)   enables Defendants to trade on and receive the benefit of the goodwill built up at great labor and expense by KKF;

      (f)   allows Defendants to gain acceptance for their products and services on KKF's reputation and goodwill;

      (g)   is likely to (and already has) diluted (by blurring and tarnishing) the distinctive quality of KKF's trademarks and trade dress; and

      (h)   continues to divert profits from KKF while unjustly enriching Defendants.

46.    Unless Defendants are restrained by this Court, Defendants' disregard for KKF's intellectual property will continue and it will

continue to cause irreparable injury to KKF and to the public for which there is no adequate remedy at law.

<u>SOLIDARY LIABILITY AMONG DEFENDANTS</u>

47.    Defendants have taken a deliberate course of action.  Defendants have collectively ignored KKF's demands, warnings, and threats of legal action.  Defendants have meaningfully violated federal and state trademark and unfair competition laws and Defendants should now be required to account for the resulting damages *in solido* under Louisiana Civil Code Article 2324, which provides for solidary liability among joint conspirators of intentional torts.

<u>COUNT ONE</u>
<u>FEDERAL TRADEMARK INFRINGEMENT</u>
<u>15 U.S.C. §§ 1114, 1125 (§§ 32, 43 OF THE LANHAM ACT)</u>

48.    KKF incorporates by reference all of the allegations contained in the preceding paragraphs of the *Complaint* as though they were reproduced fully.

49.    KKF owns the federal intellectual property rights to the Barn and Sun logo and the associated trade dress used in the KKF Program.

50.    Defendants are not authorized users of the Barn and Sun

logo, or any portion thereof, nor are the Defendants authorized to use KKF's associated trade dress.

51.    The Barn and Sun logo (or portions thereof) and KKF's associated trade dress being used by the Defendants at the Cajun Corner Café/Canal in Krotz Springs, Louisiana, are not just *similar to* or *likely to be confused with* the Barn and Sun logo and KKF's associated trade dress, they are the *actual trademark and associated trade dress* used in the KKF Program, under which Defendants now sell their own, completely unrelated, chicken products — in the same location and to some of the same people it once sold KKF's proprietary products.

52.    Defendants are using KKF's Barn and Sun logo (or portions thereof) and associated trade dress to prey upon a relatively unsophisticated clientele, customers who often are hamstrung by geography, and the lack of nearby grocery stores selling hot prepared foods.

53.    Defendants sell inferior products under KKF's Barn and Sun logo (or portions thereof) and associated trade dress, a brand identity which took KKF considerable time, effort, and expense to establish.

54.    C-Store, QSR, and supermarket programs serve food to a wide variety of mobile customers, many of whom are engaged in interstate

commerce.  Defendant's Cajun Corner Café/Canal in Krotz Springs, Louisiana, is situated along a major traffic vein along which considerable interstate commerce passes through Louisiana.  Since many C-Store, QSR, and supermarket programs accept state and federal assistance program payments, Defendants' seemingly intrastate transactions have a real tendency to affect interstate commerce.

55.    Defendants' unauthorized use of KKF's Barn and Sun logo (or portions thereof) and associated trade dress touches on every principle underlying federal infringement provisions, namely: (a) it retards KKF's customers the ability to identify the products they have grown to love; (b) it robs KKF of the considerable goodwill it has built since it first used the Barn and Sun logo and associated trade dress; and (c) it results in distorted competition in the C-Store, QSR, and supermarket marketplace.

<u>COUNT TWO</u>
<u>COMMON LAW TRADEMARK INFRINGEMENT</u>
<u>15 U.S.C. § 1125 (§ 43 OF THE LANHAM ACT)</u>

56.    KKF incorporates by reference all of the allegations contained in the preceding paragraphs of the *Complaint* as though they were reproduced fully.

3348544.2

57.    KKF has used the Barn and Sun logo and associated trade dress, as well as the Krispy Krunchy name, continuously since 1993 to identify its food products and to distinguish them from those processed and sold by others.  KKF has prominently displayed the Barn and Sun logo and associated trade dress on store displays, food packaging, letterheads, bills, direct mail advertising, telephone directory advertising, internet marketing and websites, and in periodicals distributed throughout the United States.

58.    The Barn and Sun logo and trade dress, as well as the Krispy Krunchy name, are inherently distinctive and KKF's use has given them secondary meaning to consumers in the Krotz Springs, Louisiana, area, where Defendants' still display the Barn and Sun logo (or portions thereof) and associated trade dress without KKF's permission. These items represent a uniquely-flavored and prepared product and a certain consistency and freshness which consumers expect from KKF-branded and prepared foods.

59.    The association created by Defendants' unauthorized use of KKF's Barn and Sun logo (or portions thereof) and associated trade dress has caused confusion, and is likely to cause confusion in the Krotz Springs,

Louisiana, area, and to transient consumers.  The hallmark of

infringement – confusion - is inevitable where the Barn and Sun logo (or

portions thereof) and associated trade dress being utilized without

authorization by Defendants is *confusingly similar* to the *same Barn and*

*Sun logo and associated trade dress* utilized by KKF.

<u>COUNT THREE</u>
<u>UNFAIR COMPETITION - PASSING OFF OR</u>
<u>FALSE DESIGNATION OF ORIGIN</u>
<u>15 U.S.C. § 1125 (§ 43 OF THE LANHAM ACT)</u>

60.    KKF incorporates by reference all of the allegations contained in the

preceding paragraphs of the *Complaint* as though they were reproduced

fully.

61.    Defendants' infringement on KKF's Barn and Sun logo and associated

trade dress can only be explained as intentional and deceptive.  The only

explanation for Defendants' repeated refusal to respond to KKF's

demands is Defendants desire to fool the public into believing that

Defendants' food products are made by, approved by, sponsored by, or

affiliated with KKF.

62.    Defendants' status as a C-Store on a major thoroughfare places its

activity squarely within the stream of interstate commerce contemplated by

the Lanham Act.

63.     The fact that the *confusingly similar* Barn and Sun logo (or portions thereof) and associated trade dress are being used by Defendants establishes both <u>direct</u> false representation and common law attribution under § 43(a) of the Lanham Act.

64.     Under the circumstances and given KKF's repeated demands for Defendants to discontinue these displays, Defendants continued abuse of the Barn and Sun logo (or portions thereof) and associated trade dress can only be viewed as their wilful intent to pass off, palm off, or attribute their menu items for those of KKF, defrauding the paying customer and harming KKF.

COUNT FOUR
FEDERAL TRADEMARK DILUTION
15 U.S.C. §1125(c) (§43(c) OF THE LANHAM ACT)

65.     KKF incorporates by reference all of the allegations contained in the preceding paragraphs of the *Complaint* as though they were reproduced fully.

66.     KKF's Barn and Sun logo is a strong and distinctive mark long used in connection with KKF food products.  The subject of meaningful advertising, KKF's Barn and Sun logo has been used and advertised

throughout the United States and is widely recognized by its consumers and those in the C-Store, QSR, and supermarket industries. KKF's Barn and Sun logo is in substantial and exclusive use by KKF and its KKF Program participants and it is federally registered, as alleged above.  KKF's Barn and Sun logo is recognized by the general consuming public of the United States as designation of the source for KKF's goods and is therefore a famous mark.  Defendants' acts were commenced while KKF's Barn and Sun logo had already become famous.

67.    Defendants have used KKF's Barn and Sun logo (or portions thereof) as a trademark with food products Defendants have sold in interstate commerce.  Defendants' unauthorized use of KKF's Barn and Sun logo (or portions thereof) creates more than just a likelihood of association with KKF.

68.    Defendants are in violation of § 43(c) of the Lanham Act in that Defendants' display of the Barn and Sun logo (or portions thereof) and associated trade dress is likely to cause dilution by blurring and impairing the distinctiveness of the Barn and Sun logo, all to the irreparable injury and damage of KKF.

69.    Defendants are also in violation of § 43(c) of the Lanham Act in that

Defendants display of KKF's Barn and Sun logo and associated trade dress is likely to cause dilution by tarnishment and harming the reputation of KKF's Barn and Sun logo and associated trade dress, all to the irreparable injury and damage to KKF.

70.    Having been warned multiple times and cautioned to take down KKF's Barn and Sun logo and associated trade dress, Defendants should be deemed to have committed these acts wilfully, with the intention of creating an association between Defendants' products and KKF's Barn and Sun logo and associated trade dress.  Defendants' refusal to cease their display of KKF's Barn and Sun logo and associated trade dress betrays their wilful intent to trade on the recognition of KKF's Barn and Sun logo and associated trade dress.

COUNT FIVE
UNFAIR COMPETITION - TRADE DRESS INFRINGEMENT
AND DILUTION
15 U.S.C. § 1125(c) (§ 43(a) OF THE LANHAM ACT)

71.    KKF incorporates by reference all of the allegations contained in the preceding paragraphs of the *Complaint* as though they were reproduced fully.

72.    Defendants' continued and unauthorized use of KKF's Sun and

Barn logo (or portions thereof) and associated trade dress infringes on intellectual property which has become protected under § 43 of the Lanham Act; i.e. apart from the Barn and Sun logo, all associated trade dress which accompanies the KKF Program materials and which, even apart from the Barn and Sun logo, has taken on a distinctive identity linking the trade dress to KKF products.

73.    Defendants have no legitimate reason to use these inherently distinctive materials, and which have also acquired secondary meaning.

74.    Defendants can (and should be required to) operate Defendants' food program using materials created by Defendants, without the assistance of KKF's protected trade dress and intellectual property.

75.    The KKF trade dress and intellectual property being infringed upon and diluted is not vital to the function of Defendants' food program and is only being used for improper purposes.

COUNT SIX
UNFAIR COMPETITION - FALSE ADVERTISING
15 U.S.C. § 1125 (§43(a) OF THE LANHAM ACT)

76.    KKF incorporates by reference all of the allegations contained in the preceding paragraphs of the *Complaint* as though they were reproduced fully.

77.    Defendants' use of the Barn and Sun logo (or portions thereof) and associated trade dress amounts to a false or misleading statement about Defendants' food program and the products they prepare and sell.

78.    Defendants use of the Barn and Sun logo (or portions thereof) and associated trade dress has deceived or could deceive a substantial segment of the customers and/or potential customers in Krotz Springs, Louisiana, in addition to transient customers and potential customers. The deception that has occurred is material and has likely influenced those customers' decisions about whether to buy Defendants' food program items.

79.    By its nature as a C-Store/gas station in close proximity to a major U.S. Highway with high traffic volume, Defendants' marketing is directed toward introducing (and does in fact introduce) products into the stream of interstate commerce.

80.    KKF has been directly harmed in two ways by Defendants' actions. First, but for this type of unfair competition, Defendants would be required to participate in the KKF Program to benefit from KKF's name and reputation. Second, KKF's sales has suffered and will continue to suffer because its name has become linked (at least in the local marketplace and

with transient customers) with an inferior product, or markedly different

product, than that with which previous KKF customers were familiar.

COUNT SEVEN
TRADEMARK INFRINGEMENT
LOUISIANA REVISED STATUTES § 51:222

81.   Under the same facts alleged in Count One, Defendants'

actions amount to infringement of the Barn and Sun logo and associated

trade dress under Louisiana trademark law.

COUNT EIGHT
TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION
LOUISIANA REVISED STATUTES § 51:223.1

82.   Under the same facts alleged in Counts Four and Five,

Defendants' actions have caused dilution ("dilution by blurring") of

KKF's brand, the Barn and Sun logo, and associated trade dress, and

injury to KKF's business reputation ("dilution by tarnishment") under

Louisiana trademark law.

COUNT NINE
UNFAIR COMPETITION - FALSE ADVERTISING AND PASSING OFF
LOUISIANA REVISED STATUTES §§ 51:1405 AND 51:411

83.   Under the same facts alleged in Counts Three and Six, Defendants'

unauthorized advertising of KKF chicken and foods at their locations

amounts to passing off and is the type of false advertising prohibited by

Louisiana Revised Statutes § 51:411.  These acts also constitute unfair competition under Louisiana's Unfair Trade Practices and Consumer Protection Law.  La. Rev. Stat. Ann. § 51:1405.

COUNT TEN
UNJUST ENRICHMENT
LOUISIANA CIVIL CODE ARTICLE 2298

84.    Under the facts alleged, Defendants' unauthorized advertising of KKF chicken and foods at their locations has allowed Defendants to be enriched without cause, at the expense of KKF, its name, the Barn and Sun logo, and associated trade dress, all in violation of the quasi-contractual provisions of Louisiana's Civil Code. LA. CIV. CODE ANN. art. 2298.

COUNT ELEVEN
WILFUL, KNOWING, BAD FAITH VIOLATIONS

85.    Defendants have been repeatedly notified by KKF's attorneys, KKF's principals, and KKF's trainers and marketing agents, that the Barn and Sun logo, associated trade dress, and all other KKF intellectual property, must be removed from the Cajun Corner Café in Krotz Springs, Louisiana.

86.    Defendants have been put on notice of the legal consequences of their use of KKF's intellectual property.

87.    Defendants have repeatedly ignored these requests and demands and should accordingly be deemed to have intended to cause confusion, mistake, or deception with their willful, knowing, and bad faith violations of federal and state laws and regulations, all of which qualifies this matter as an "exceptional case" contemplated by 11 U.S.C. § 1117(a).

<u>COUNT TWELVE – BREACH OF CONTRACT</u>

88.    In the written agreement between Defendants and KKF (Exhibit "B"), Defendants agreed to "remove all Krispy Krunchy signage and paper goods at [Defendants'] expense."  Defendants have refused to comply with this contractual obligation despite repeated demands, causing damage to KKF as described herein.

<u>COUNT THIRTEEN</u>
<u>PRELIMINARY AND PERMANENT INJUNCTIONS</u>
<u>15 U.S.C. § 1116 AND FED. R. CIV. P. 65</u>

89.    Based on the reputational nature of the damages suffered as a direct and proximate result of Defendants' acts, KKF has been damaged, and unless Defendants are restrained and permanently enjoined by this Court, KKF will continue to suffer serious, irreparable injury, including a permanent loss of the goodwill associated with KKF, its chicken and food, the Barn and Sun logo, and associated trade dress, all of which cannot be sufficiently or

timely addressed by the grant of legal remedies.

COUNT FOURTEEN
DESTRUCTION OF INFRINGING ARTICLES
15 U.S.C. § 1118

90.     Defendants have systematically and repeatedly engaged in trademark infringement (15 U.S.C. § 1114); and unfair competition by passing off; and trade dress infringement; and false advertising (15 U.S.C. § 1125), and a willful violation of federal anti-dilution laws (15 U.S.C. § 1125(c)). This Court is entitled to order Defendants to deliver up and destroy all KKF Program materials, all instances of the Barn and Sun, and any associated trade dress in the possession of Defendants.  11 U.S.C. § 1118.

REQUEST FOR TRIAL BY JURY AND PRAYER FOR RELIEF

91.     INJUNCTIVE RELIEF:  KKF prays that a preliminary and permanent injunction issue immediately and without bond enjoining Defendants from any use or display of KKF Program materials, including without limitation the Barn and Sun logo (or portions thereof) and all associated trade dress, all as contemplated by 15 U.S.C. §§ 1116(a) and 1125(c)(1),(5); and

92.     INJUNCTIVE RELIEF:  KKF further prays that the Court immediately order Defendants to deliver up and destroy all KKF

Program materials in Defendants' possession, including but not limited

to all instances of the Barn and Sun logo and any associated trade

dress, as authorized by 15 U.S.C. § 1118; and

93.     TRIAL BY JURY; LEGAL RELIEF:  After a <u>trial by jury</u> on all issues

raised by this *Complaint*, save injunctive relief, KKF respectfully prays for:

   (a)   an immediate accounting by Defendants to the Court and
         KKF of all profits obtained during the period of
         unauthorized display of KKF Program materials in violation
         of the contract between Defendants and KKF (Exhibit "B"),
         including but not limited to the Barn and Sun logo and
         associated trade dress and intellectual property, all as
         contemplated by the contract and by 15 U.S.C. § 1117(a);

   (b)   an award of the amount equal to the profits identified by the
         accounting ordered in (a) above, according to 15 U.S.C. §
         1117(a)(1);

   (c)   an award of <u>treble</u> damages sustained by KKF in the
         marketplace which resulted from Defendants' common law and
         statutory trademark infringement; federal and common law
         trademark and related trade dress infringement and dilution;
         federal unfair competition (passing off, false designation of
         origin, false advertising), including without limitation the cost of
         rehabilitative advertising to mitigate the damage caused by
         Defendants' tortious conduct, as contemplated by 15 U.S.C. §
         1117(a);

   (d)   judicial interest on the damages awarded in (b) and (c)
         above;

   (e)   an award of the costs associated with this action as provided
         for by 15 U.S.C. § 1117(a);

    (f)     an award for attorney's fees based on the exceptional and abusive nature of Defendants' refusal to discontinue using KKF's intellectual property for Defendants' own gain.

94.    All other relief, whether legal or equitable, deemed appropriate by this Honorable Court, all premises considered.

Respectfully submitted,

ONEBANE LAW FIRM

BY:   /s/Edward C. Abell, Jr.
       EDWARD C. ABELL, JR. (#2284)
       Email:  abelle@onebane.com
       GREG R. MIER (#24561)
       Email:  mierg@onebane.com
       1200 Camellia Boulevard (70508)
       Suite 300
       Post Office Box 3507
       Lafayette, LA  70502-3507
       Phone:  (337) 237-2660
       Fax:  (337) 266-1232
ATTORNEYS FOR KRISPY
KRUNCHY FOODS, L.L.C.

**PLEASE SERVE:**

**CAJUN WORKS INC.,**
**Through its agent for service of process,**
Toby Kimball
2431 West Atchafalaya Levee Road
Krotz Springs, Louisiana 70750

TOBY KIMBALL
2431 West Atchafalaya Levee Road
Krotz Springs, Louisiana, 70750

DENISE SANDERS KIMBALL
2431 West Atchafalaya Levee Road
Krotz Springs, Louisiana, 70750